George L. Lewis, Adams & Ellis, Savannah, GA, for Defendant–Appellant.

Robert Bartley Turner, Savannah, GA, for Plaintiff–Appellee.

Before EDMONDSON, DUBINA and BARKETT, Circuit Judges.

BARKETT, Circuit Judge:

Appellant–Defendant Food Lion, Inc., appealed the district court's denial of summary judgment in this diversity action brought by Eric Doss. Doss instituted this common-law tort action against Food Lion, Inc., alleging that Food Lion's delay in authorizing treatment of his psychological and psychiatric injuries constituted an intentional aggravation of his work-related injuries. At issue in this case is whether Doss's claim is actionable as an independent tort under Georgia law, or barred by the exclusive-remedy provision of the Workers' Compensation Act. In the initial appeal, we concluded that this question of Georgia law was dispositive and noted that it was unanswered by the clear controlling precedent of the Supreme Court of Georgia.

Accordingly, we certified the following question to the Supreme Court of Georgia:

DOES GEORGIA LAW RECOGNIZE AN INDEPENDENT CAUSE OF ACTION APART FROM ANY REMEDY AVAILABLE UNDER THE GEORGIA WORKERS' COMPENSATION ACT WHERE AN EMPLOYER AND/OR INSURER HAS INTENTIONALLY DELAYED AUTHORIZING MEDICAL TREATMENT TO WHICH AN EMPLOYEE IS ENTITLED UNDER THE ACT AND WHERE SUCH DELAY HAS EXACERBATED A WORK–RELATED PHYSICAL INJURY?

*Doss v. Food Lion, Inc.,* 83 F.3d 378, 380 (11th Cir.1996).

The Georgia Supreme Court answered the question in the negative. *Doss v. Food Lion, Inc.,* 267 Ga. 312, 477 S.E.2d 577, 579 (1996). Based on this opinion we reverse the district court's denial of Food Lion's motion for summary judgment and remand this case for further proceedings consistent with the opinion of the Georgia Supreme Court.

The UNITED STATES, Plaintiff–Appellee,

v.

JAC NATORI CO., LTD., Defendant–Appellant.

No. 96–1118.

United States Court of Appeals, Federal Circuit.

Feb. 13, 1997.

Thomas J. Kovarcik, of Irving A. Mandel, Counselor at Law, New York City, argued for defendant-appellant. With him on the brief were Irving A. Mandel and Jeffrey H. Pfeffer.

John K. Lapiana, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for plaintiff-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Before RICH, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

In 1990, the government filed a complaint in the Court of International Trade against Jac Natori Co., Ltd., an importer. The complaint sought to recover penalties based on allegedly inaccurate entry forms filed with a shipment of goods in 1985, penalties based on fraud in connection with entries in 1981 and 1982, and unpaid duties resulting from the 1981 and 1982 entries. After trial, the Court of International Trade awarded the government penalties for the 1985 entry and unpaid duties for the 1981 and 1982 entries. Natori appeals from the award of unpaid duties for 1981 and 1982, arguing that the collection of duties is barred by the statute of limitations and that the government failed to prove its entitlement to unpaid duties for those entries. We affirm-in-part, vacate-in-part, and remand for further proceedings.

I

During the period at issue in this case, Natori imported wearing apparel from a Philippines-based manufacturer known as FFI. In 1985, the Customs Service discovered significant discrepancies between Natori's entry forms and the contents of a particular shipment from FFI to Natori. The Customs inspector found that most of the boxes in the shipment contained more merchandise than was declared on the entry forms. After that discovery, Customs audited Natori's accounting records for 1981 and 1982. As a result of the audit, Customs concluded that numerous consumption entries presented by Natori during 1981 and 1982 understated the dutiable value of merchandise Natori received from FFI.

On August 30, 1990, the government commenced an action against Natori in the Court of International Trade. The first two counts of the complaint sought alternative penalties under 19 U.S.C. § 1592(c)(2) and (c)(3) in the amount of either $32,859.04 (for gross negligence) or $16,429.52 (for negligence) for underreporting the value of the merchandise in the 1985 shipment. Count 3 of the complaint alleged that Natori fraudulently understated the value of merchandise imported during 1981 and 1982, in violation of 19 U.S.C. § 1592(a), and sought penalties in the amount of $5,284,000 under 19 U.S.C. § 1592(c)(1). In count 4, Customs alleged that Natori's violations of section 1592(a) in 1981 and 1982 resulted in the loss of approximately $1,000,000 in duties, which Customs sought to recover pursuant to 19 U.S.C. § 1592(d).

After a bench trial, the court found that Natori had been grossly negligent with respect to its entries in 1985 and held that the government was entitled to recover $32,859.04 in penalties for that violation. With respect to the 1981 and 1982 entries, the court found that the government had failed to establish by clear and convincing evidence that Natori had fraudulently undervalued its merchandise to deprive the United States of lawful duties; the court therefore denied the government's request for penalties in connection with those entries. The court found, however, that Natori had been at least negli-

gent in its accounting practices during 1981 and 1982, and that its negligence had resulted in underreporting the dutiable value of imports during those years. The court then calculated the duties owed for those two years to be $438,176.27 and entered judgment for the government in that amount, plus interest.

## II

■ Natori's principal argument on appeal is that the five-year statute of limitations set forth in 19 U.S.C. § 1621 bars the government's claim for duties under 19 U.S.C. § 1592(d) for the 1981 and 1982 entries. The Court of International Trade held that the statute of limitations in the version of section 1621 that was in effect at the time this case was brought did not apply to the collection of duties under section 1592(d). We agree.

Section 1592(a) provides that no person through fraud, gross negligence, or negligence may enter, introduce, or attempt to enter or introduce any merchandise into the United States by means of a material false document or statement, or a material omission. Section 1592(c) lists various remedies for violations of section 1592(a), including penalties and forfeitures. In addition, section 1592(d) provides that if the government has been deprived of lawful duties as a result of a violation of section 1592(a), "the appropriate customs officer shall require that such lawful duties be restored, whether or not a monetary penalty is assessed."

Section 1592 does not contain a limitations period for the recovery of either penalties or lost duties. Instead, the limitations period applicable to section 1592 is found in 19 U.S.C. § 1621. At the time of the entries and the filing of the present action, section 1621 provided, in pertinent part:

No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered: *Provided,* That in the case of an alleged violation of section 1592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than

five years after the date the alleged violation was committed....

19 U.S.C. § 1621 (1980). That version of section 1621 referred only to penalties and forfeitures. In 1993, however, Congress amended section 1621 to add a reference to the recovery of duties under section 1592(d). That amendment makes clear that in cases governed by the amended version of section 1621, an action for the recovery of duties is subject to the five-year limitations period. In its amended form, section 1621 now provides, in pertinent part:

No suit or action to recover any duty under section 1592(d), 1593a(d) of this title, or any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered; except that—

(1) in the case of an alleged violation of section 1592 or 1593a of this title, no suit or action (including a suit or action for restoration of lawful duties under subsection (d) of such sections) may be instituted unless commenced within 5 years after the date of the alleged violation or, if such violation arises out of fraud, within 5 years after the date of discovery of fraud....

19 U.S.C. § 1621 (1994).

Natori argues that the 1993 amendment to section 1621 merely codified the correct interpretation of former section 1621 by making explicit that the five-year limitations period applies to the recovery of duties as well as penalties under section 1592. Accordingly, Natori argues, the court should construe the five-year limitations period of the pre–1993 version of section 1621, which governs this case, to apply to the recovery of duties under section 1592(d).

■ We find that argument unconvincing. It is well settled that a statute of limitations applicable to a government enforcement action must be clear and unambiguous, and that in the absence of a clearly expressed congressional bar, the government action is not subject to any time limitation. *See, e.g., Dupont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68

L.Ed. 788 (1924); *United States v. Tri–No Enters., Inc.,* 819 F.2d 154, 158 (7th Cir. 1987); *United States v. City of Palm Beach Gardens,* 635 F.2d 337, 339 (5th Cir.1981). On its face, former section 1621 applied only to a "pecuniary penalty or forfeiture of property." The recovery of an unpaid duty under section 1592(d), however, is neither a penalty nor a forfeiture. *See United States v. Blum,* 858 F.2d 1566, 1569 (Fed.Cir.1988). Moreover, the government's right to recover unpaid duties under section 1592(d) does not depend on its right to obtain penalties pursuant to section 1592(c). *Id.* Therefore, even though the recovery of penalties for Natori's entries in 1981 and 1982 was expressly barred by the limitations period of former section 1621, an action for the recovery of unpaid duties was not so barred.

We do not attach great weight to the fact that Congress added an explicit limitations period for the recovery of duties under section 1592(d) when it amended section 1621 in 1993. It is not unknown for Congress to amend a statute simply in order to make explicit what was implicit before. Nonetheless, the circumstances surrounding the amendment give force to the conclusion that the pre-amendment version of section 1621 did not apply to actions for the recovery of duties under section 1592(d). In particular, the House committee report accompanying the amendment to section 1621 stated that the amendment "creat[es] a statute of limitations for the recovery of lawful duties of which the United States was deprived as a result of a violation of 19 U.S.C. § 1592." H.R.Rep. No. 103–361(I), at 152 (1993), *reprinted in* 1993 U.S.S.C.A.N. 2552, 2702. There could hardly be a clearer statement of the Committee's understanding that the pre-amendment version of section 1621 did not apply to the recovery of unpaid duties under section 1592(d).

In response to this evidence of Congress's understanding of the pre–1993 version of the scope of section 1621, Natori cites a statement made by Commissioner of Customs Robert E. Chasen during his 1978 testimony before a House committee that was considering an amendment to section 1592. In advocating the proposed amendment, Commissioner Chasen testified that Customs interpreted the proposed legislation "as allowing the government to collect all duties (not previously collected) arising out of the discovery of a section [1592] violation (whether or not a monetary penalty is assessed), limited only by the five year statute of limitations." *Customs Procedural Reform Act of 1977: Hearings on H.R. 8149 and H.R. 8222 Before the Subcomm. On Trade of the House Comm. On Ways and Means,* 95th Cong. 46, 57–58 (1977). That remark does not provide a sufficient basis to disregard the plain statutory language and infer the presence of a statute of limitations for the collection of unpaid duties when Congress had not imposed one.

■ Natori argues that the title of section 1592—"Penalties for fraud, gross negligence, and negligence"—informs the scope of the section. Accordingly, Natori argues, actions for the recovery of unpaid duties under section 1592(d) necessarily fall within the reach of former section 1621, which applied the statute of limitations to "any pecuniary penalty or forfeiture of property." As we have noted, however, this court held in *Blum* that the recovery of duties under section 1592(d) is not a penalty, and the inclusion of section 1592(d) within a statutory section denominated "penalties" does not make it one. As the court noted in *Blum,* the fact that the title of section 1592 refers to penalties "is not to say that each and every subsection of that section is to be characterized as a penalty provision." 858 F.2d at 1569. The titles of statutes are simply reference guides and cannot limit or contravene the statutory text. *See Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R.,* 331 U.S. 519, 528–529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947) (statutory heading "is but a short-hand reference to the general subject matter involved"). Section 1592 deals mainly with penalties and forfeitures, so it is not surprising that the title of the statute refers to penalties and forfeitures, even though one portion of the statute provides a remedy that does not fit within that category. In sum, Natori has failed to persuade us that former section 1621 should be read, contrary to its plain terms, to impose a limitations period on the collection of unpaid duties of which the gov-

ernment was deprived as the result of a violation of section 1592(a).

## III

Natori next argues that the government failed to prove a section 1592(a) violation, which is a predicate to the recovery of unpaid duties under section 1592(d). In particular, Natori contends that the government fell short in several ways in its effort to show that Natori understated the dutiable value of the goods imported during 1981 and 1982.

■ First, Natori argues that the trial court erred in relying on copies of entry forms that were maintained by Natori's broker rather than requiring the government to produce the original processed forms. However, Natori presented no evidence that any of the entry forms on which the court relied were altered in the course of processing. While the evidence on which the government relied was not as conclusive as the processed entries would have been, the copies of the entries were nonetheless admissible, probative evidence. We decline Natori's invitation to adopt a rule that the government's failure to introduce all of the processed entry forms requires that judgment be entered against it for failure of proof.

■ Second, Natori argues that the Customs auditor who testified at trial misunderstood Natori's accounts-payable ledger and therefore reached a false conclusion about the difference between the actual dutiable value and the declared dutiable value of the goods imported during 1981 and 1982. Pointing to testimony from its own expert and an FFI representative, Natori argues that the ledger included cost accounting data from FFI, and that it did not represent differences between the declared and actual value of the imported goods. The Customs auditor, however, addressed the question of the accounts-payable ledger at length and explained in some detail the grounds for his conclusion that the ledger reflected amounts payable by Natori to FFI and thus demonstrated that the declared value of the imported goods was less than their actual value. Moreover, although the testimony of Natori's expert supports Natori's theory that Natori

was simply monitoring FFI's costs, the expert testified that he did not consult with the pertinent Natori and FFI officials about their accounting practices. Under these circumstances, the trial court was entitled to credit the Customs auditor's testimony over the testimony of Natori's witnesses.

■ Third, Natori argues that the trial court found that the balances listed in the Natori accounts-payable ledger were variances, and that the court improperly concluded that the listed amounts were dutiable without finding that those amounts were paid or payable to FFI. The trial court, however, found that the balances were not variances. In so finding, the court relied on the testimony of the Customs auditor and noted that the balances were entered in the importer's accounts-payable ledger, which is not a typical place to find a listing of the manufacturer's variances. Contrary to Natori's suggestion, there is no indication that the trial court regarded the balances in the accounts-payable ledger as dutiable even if they were not amounts paid or payable by Natori. Accordingly, because the court found that the ledger balances represented amounts payable, the court properly concluded that the balances "represented undeclared value upon which duties must be paid."

## IV

■ Natori's final contention is that the duty rates that the trial court selected for 1981 and 1982 were too high. Because of uncertainty about the nature of the goods imported at the time of the false entries in 1981 and 1982, the court could not determine the duty rate at which those goods should be assessed. The court therefore calculated the unpaid duties by reference to a constructed "average duty rate" that the government determined for all of Natori's 1981 and 1982 imports. The trial court, however, did not explain the analysis that led the government to propose and the court to adopt 42.5 percent as the average duty rate for 1981 and 39.4 percent as the average duty rate for 1982. Natori argues that those rates are unjustifiably high, and points out that the average duty rate selected for 1981 was the highest duty rate applicable to any of Nato-

ri's imported goods during that year, and that the average duty rate for 1982 was very close to the highest duty rate applicable to Natori's imported goods during that year. The trial testimony that the government quotes in its brief does not provide a sufficient basis for us to determine whether the derived average duty rates are correct, and our independent review of the record has not shed any additional light on this issue. Accordingly, we remand the case to the Court of International Trade for an explanation of the court's selection of the average duty rates of 42.5 percent for 1981 and 39.4 percent for 1982, and for an adjustment of those rates if, upon reexamination, the court deems any such adjustment to be required.

Each party shall bear its own costs for this appeal.

*AFFIRMED–IN–PART, VACATED–IN–PART,* and *REMANDED.*