UNITED STATES OF AMERICA, PLAINTIFF *v.*
JAC NATORI CO., LTD., DEFENDANT

Court No. 90–08–00445

(Dated December 11, 1998)

*Frank W. Hunger*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(John K. Lapiana)* for the plaintiff.
*Irving A. Mandel; Thomas J. Kovarcik*, of counsel, for the defendant.

## MEMORANDUM AND ORDER

AQUILINO, *Judge:* The court's slip op. 95–126, 19 CIT 930 (1995), in the above action concluded that the plaintiff was entitled to recover on the first and fourth counts of its complaint based upon 19 U.S.C. §1592 and 28 U.S.C. §1582 and directed the parties to settle and present a proposed final judgment. When they proved either unable or unwilling to do so, the court entered judgment on plaintiff's first count in the amount of $32,859.04 and on its fourth count in the total amount of $438,176.27, plus interest as provided by law.[1]

Whereupon the defendant appealed to the U.S. Court of Appeals for the Federal Circuit, which affirmed this court's findings of fact and conclusions of law, except as follows:

> Natori's final contention is that the duty rates that the trial court selected for 1981 and 1982 were too high. Because of uncertainty about the nature of the goods imported at the time of the false entries in 1981 and 1982, the court could not determine the duty rate at which those goods should be assessed. The court therefore calculated the unpaid duties by reference to a constructed "average duty rate" that the government determined for all of Natori's 1981 and 1982 imports. The trial court, however, did not explain the analysis that led the government to propose and the court to adopt 42.5 percent as the average duty rate for 1981 and 39.4 percent as the average duty rate for 1982. Natori argues that those rates are unjustifiably high, and points out that the average duty rate selected for 1981 was the highest duty rate applicable to any of Natori's imported goods during that year, and that the average duty rate for 1982 was very close to the highest duty rate applicable to Natori's imported goods during that year. The trial testimony that the government quotes in its brief does not provide a sufficient basis for us to determine whether the derived average duty rates are correct, and our independent review of the record has not shed any additional light on this issue. Accordingly, we remand the case to the Court of International Trade for an explanation of the court's selection of the average duty rates of 42.5 percent for 1981 and 39.4 percent for 1982, and for an adjustment of those rates if, upon

---

[1] *See* Slip Op. 95–164, 19 CIT 1219 (1995). Plaintiff's other counts, as well as defendant's counterclaim, were dismissed.

reexamination, the court deems any such adjustment to be required.

*United States v. Jac Natori Co.*, 108 F.3d 295, 300–01 (Fed.Cir. 1997).

I

After that court's mandate issued, this court conferred with counsel for both sides, who indicated a desire finally to (re)settle the judgment, whereupon they were directed to do so and report back. On its part, the defendant takes the position that

the evidence in the record is sufficient only to establish that duty is owed on the undeclared value at the rates of 21.0% in 1981 and 20.0% in 1982, for a total of $220,407.

Defendant's Memorandum to Assist the Court in Determining the Amount of Duty Due, p. 1. In other words,

based on the deficient record created by the government, and its missing entries, an impartial party can only conclude that the undervaluation was dutiable at the lowest rates, i.e., 21 and 20 percent for 1981 and 1982 respectively.

Defendant's Reply Memorandum, p. 5 (underscoring deleted).

This latter statement is in response to plaintiff's position that

the use of average, or proportionate, duty rates appropriately and fairly reconstruct [*sic*] the "duty rate[] at which [Natori's] goods should be assessed" in light of the "uncertainty" about their exact "nature." * * * In its judgment, this Court determined that the value of merchandise entered in 1981 was undervalued by $351,588.46, and, in 1982, by $789,871. That keystone conclusion was affirmed by the court of appeals and is not challenged by Natori. By employing the average, or proportionate, duty rates methodology, which assumes undervaluation proportionate to the declared value of goods entered under each duty rate, the loss of revenue is $146,946.04 for 1981 and $288,252.48 for 1982, or a total of $435,198.52.[2]

The government adds that this approach "is especially appropriate here, where only .01 percent of the value of goods entered during 1981 was at the lowest rate and .09 percent of that entered in 1982." Plaintiff's Response to Defendant's Memorandum, p. 3 n. 2. And it presents a chart, *infra*, to illustrate its analysis.

In addition to its continuing claim to recovery on its fourth count against the defendant, the plaintiff would have this court interpret the award of interest thereon to be from the dates those revenues were lost to the Treasury, which, of course, were long before the final judgment herein.

II

At the outset, it is necessary to recite that this court is bound to respect the mandate of the appellate tribunal and cannot consider ques-

---

[2] Plaintiff's Response to Defendant's Memorandum, pp. 3–4, quoting from the opinion of the Federal Circuit, 108 F.3d at 300.

tions which the mandate has laid to rest. *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 140 (1940). It also is recognized that the only issue left open by the Federal Circuit is "whether the derived average duty rates are correct", upon remand

> for an explanation of the * * * selection of the average duty rates of 42.5 percent for 1981 and 39.4 percent for 1982, and for an adjustment of those rates if, upon reexamination, the court deems any such adjustment to be required.

108 F.3d at 301.

A

As the record of the trial reflects, and the court of appeals has determined, the applicable rates of duty were not a major bone of contention. Indeed, the only credible evidence adduced thereon was by the government—to the effect that weighted averages are appropriate under the circumstances. This court concurred, albeit without any reported explanation.

Relying on this court's findings of total undeclared dutiable values of $351,588.46 for 1981 and $732,871 for 1982, 19 CIT at 1221, which were affirmed by the Federal Circuit, the plaintiff attempts to explain that lost-revenue totals of $146,946.04 and $288,252.48 for those respective years

> were calculated by (1) determining the ratio of entered value under each applicable duty rate; and (2) multiplying that fraction by the amount of undervaluation as determined by the Court in its opinion.

Plaintiff's Response to Defendant's Memorandum, p. 4. And it supplements the record with the following breakdown of numbers:

| Actual Duty Rates | Total Entered Values By Rate | Ratio of Entered Value by Rate | Undervaluation Apportioned by Rate (col. 2 x col. 1) | Loss of Revenue (col. 4 x col. 1) |
|---|---|---|---|---|
| **1981** | | | | |
| 42.5% | 447,042 | .9569 | 336,435 | 142,984.87 |
| 35% | 6,183 | .0132 | 4,640.97 | 1,624.34 |
| 32.5% | 1,425 | .0031 | 1,089.92 | 354.22 |
| 32% | 12,467 | .0267 | 9,387.41 | 1,971.36 |
| 21% | 48 | .0001 | 35.16 | 11.25 |
| Total | 467,165 | 1.000 | 351,588.46 | 146,946.04 |
| Approx. Avg. Duty Rate | | **41.79** | | |
| **1982** | | | | |
| 39.7% | 521,967 | .9192 | 673,655.02 | 267,441.04 |
| 32% | 25,027 | .0441 | 32,319.61 | 10,342.28 |
| 20% | 535 | .0009 | 659.59 | 131.87 |
| 39.4% | 20,348 | .0358 | 26,236.78 | 10,337.29 |
| Total | 567,877 | 1.000 | 732,871 | 288,252.48 |
| Approx. Avg. Duty Rate | | **39.33** | | |

*Id.* at 5 (label and decimal arrangement somewhat altered by court for ease of consideration).

The defendant rejects this submission with a written array of pejoratives. *See generally* Defendant's Reply Memorandum, pp. 2–5. Indeed, on its face, it is "confusing" and somewhat "contrived". For example, the undervaluation apportioned by rate is not derived (as labelled) by multiplying the number(s) in column 2 by the rate(s) in column 1. Rather, that undervaluation has been determined via multiplication of the confirmed total undeclared dutiable values for the two years in question by the derived ratios set forth in the third column. Nonetheless, the court cannot, and therefore does not, subscribe to defendant's antithesis, namely,

> there is no basis for * * * disregarding the possibility: (i) that all the value on the missing entries was dutiable at the lowest rate paid by this importer, i.e., 21 or 20 percent, or (ii) that the undervaluation was totally attributable to that merchandise subject to the lowest rate of duty presumed applicable to the missing entries. Accordingly, based on the deficient record created by the government, and its missing entries, *an impartial party can only conclude that the undervaluation was dutiable at the lowest rates, i.e., 21 and 20 percent for 1981 and 1982 respectively.*

*Id.* at 4–5 (emphasis in original).

Not only is there basis in logic for disregarding defendant's possibility, as well as in plaintiff's presentment[3], to repeat, the mandate of the court of appeals is simply to re-examine the average duty rates and adjust them if this court deems any adjustment to be required. 108 F.3d at 301. In compliance therewith, given the record, as supplemented, this court reaffirms the reliance in this case on weighted-average duty rates, but also concludes that minor adjustment of the 42.5 and 39.4 percent set forth in slip op. 95–164, 19 CIT at 1221, for 1981 and 1982, respectively, is indicated. For the second year, 39.33 percent is slightly more accurate, which, when multiplied by the $732,871.00 in total undervaluation, results in lost revenue of $288,238.16, not precisely the $288,252.48 posited by the plaintiff.[4] Upon reconsideration of the numbers for 1981, the court finds that 42.5 percent was somewhat high. The more precise weighted average is 42.09 percent, not 41.79 as presented by the plaintiff, based upon the court's mathematical check of the government's own figures above. Multiplying the total 1981 undervaluation of $351,588.46 by that average results in lost revenue of $147,983.58.[5]

---

[3] The court has re-examined the evidence of record and confirms that the higher duty rates set forth in the chart did indeed attach to entries individually revisited.

[4] In fact, the court's own computation of the loss, if it were to rely upon the four different duty rates applicable in 1982, totals $288,252.53.

[5] Not only is $146,946.04 not 41.79 percent of $351,588.46, as the plaintiff would have the court find, the total lost revenue, calculated on an individuated basis for 1981, would be $147,974.78 rather than the incorrect total $146,946.04 presented.

## B

Characterizing defendant's continuing failure to remit lost revenues as "an interest free loan"[6], the plaintiff asserts now a claim for prejudgment interest thereon. And it is clear that "the Court of International Trade in exercising its equitable powers may in its sound discretion" award such interest. *United States v. Reul*, 959 F.2d 1572, 1577 (Fed.Cir. 1992). Hence, such awards are governed by considerations of equity and fairness. *E.g.*, *United States v. Monza Automobili*, 12 CIT 239, 240–41, 683 F.Supp. 818, 820 (1988).

No one is without responsibility for the delay in laying this case finally to rest, certainly not the defendant importer, and not the U.S. Customs Service. While the record does not lend much support to defendant's attempt to blame one Customs officer in particular[7], it also is not a display of government at its best. Where, as here, there has been clear laxness in initiating and prosecuting this kind of case, award of prejudgment interest has been denied. *See, e.g.*, *United States v. B.B.S. Electronics Int'l Inc.*, 9 CIT 561, 567, 622 F.Supp. 1089, 1095 (1985). And courts have also denied award of such interest where the underlying recovery is unclear, which has been true here. *See, e.g.*, *Eastern Air Lines, Inc. v. Atlantic Richfield Co.*, 712 F.2d 1402, 1410 (Temp.Emer.Ct.App.), *cert. denied*, 464 U.S. 915 (1983).

## III

In view of the foregoing, the plaintiff is entitled to recover from the defendant $436,221.74, plus interest thereon since September 27, 1995 as provided by law.

---

[6] Plaintiff's Response to Defendant's Memorandum, p. 7, quoting *United States v. Goodman*, 6 CIT 132, 140, 572 F.Supp. 1284, 1289 (1983).

[7] *Cf.* Defendant's Reply Memorandum, pp. 7–9.