Slip Op. 05 - 57

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x

UNITED STATES,                       :

                    Plaintiff, :

          v.                         :   Court No. 01-00358

WASHINGTON INTERNATIONAL INSURANCE   :
CO.,
                                     :

                    Defendant.       :
                                     :
- - - - - - - - - - - - - - - - - - -x

<u>Opinion</u>

[Upon cross-motions as to alleged violation
 of the Tariff Act, summary judgment for the
 defendant.]

                              Decided:  May 12, 2005


<u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>,
Director, and <u>Patricia M. McCarthy</u>, Assistant Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice
(<u>Kenneth D. Woodrow</u>), for the plaintiff.

<u>Sandler, Travis & Rosenberg, P.A</u>. (<u>Arthur K. Purcell</u>) for the
defendant.


          AQUILINO, Senior Judge: Tariff acts of the United States
have long provided for penalties for inadequate or omitted informa-
tion with regard to imposition of duties on goods upon entry into
the country.  E.g., Act of March 3, 1791, §13, 3 Stat. 199, 202; 19
U.S.C. §1592(a)(1),(c) (1992).  Moreover, the Tariff Act of 1930,
as amended, has provided for government recovery of unpaid duties,
"whether or not a monetary penalty is assessed"[1], which provision

---

[1] 19 U.S.C. §1592(d) (1992).

the courts have held to apply to an importer's surety.   See, e.g., United States v. Blum, 858 F.2d 1566 (Fed.Cir. 1988); United States v. Yuchius Morality Co., 26 CIT 1224 (2002).

I

That provision is the crux of the complaint filed herein against the defendant surety Washington International Insurance Company for recovery of duties in the sum of $542,472.87, "representing the amount due by the terms of its Customs bond."[2]  While defendant's answer denies the occurrence of any violation of section 1592(a) upon entry of the imports at issue[3], it does admit that the

> surety is liable for payment of Section 1592(d) duties that are lawfully demanded and are the result of a violation of 19 U.S.C. §1592(a).

Defendant's Answer, para. 2, p. 4.

Following this joinder of issue, the parties simultaneously have interposed cross-motions for summary judgment, which are subject to the court's exclusive jurisdiction per 28 U.S.C. §1582.  The gravamen of plaintiff's motion is that the importer(s) of record, Sigallo Limited and Franshell Limited of New York, N.Y., defendant's principal(s), violated section 1592 "in at least three

---

[2] Complaint, para. 17.  Attached to the complaint as exhibit B is a copy of defendant's continuous bond on Customs Form 301, effective July 30, 1985 in the amount of $300,000.

[3] Those 62 consumption entries of sweaters assembled in Guam from otherwise-completed, knit-to-shape components of foreign origin occurred between April 3, 1992 and March 15, 1993.   See Complaint, Exhibit A.

ways"[4], namely, by falsely classifying the entries as duty-free
under the Harmonized Tariff Schedule of the United States
("HTSUS"); by falsely stating the value of them, which "had no
basis in fact and included a fabricated amount for 'profit' attrib-
utable to the Guam manufacturer"[5]; and by omitting material in-

---

[4] Plaintiff's Memorandum, p. 13.

[5] Id. Guam is an insular possession of the United States, and
General Note 3(a)(iv) to the 1992 HTSUS provided, for example, in
part:

Products of Insular Possessions.

(A)     . . . [G]oods imported from insular posses-
        sions of the United States which are outside
        the customs territory of the United States are
        subject to the rates of duty set forth in
        column 1 of the tariff schedule, except that
        all such goods the growth or product of any
        such possession, or manufactured or produced
        in any such possession from materials the
        growth, product or manufacture of any such
        possession or of the customs territory of the
        United States, or of both, which do not con-
        tain foreign materials to the value of more
        than 70 percent of their total value (or more
        than 50 percent of their total value with
        respect to goods described in section 213(b)
        of the Caribbean Basin Economic Recovery Act),
        coming to the customs territory of the United
        States directly from any such possession,. . .
        are exempt from duty.

The reported intent of that statute with regard to the Caribbean
region cautioned, however, that the

    object of these [foreign-content] provisions is to pre-
    vent pass-through operations in which the work performed
    is of little economic benefit to the Caribbean and
    constitutes avoidance of U.S. duties.

H.R. Rep. No. 98-266, p. 13 (1983).

formation about refunded profits that would have enabled Customs to accurately appraise the true value of the merchandise.    Plaintiff's Memorandum, p. 13.

Each side's motion for summary judgment is accompanied by a required statement of material facts as to which the moving party contends there is no genuine issue to be tried within the meaning of USCIT Rule 56(h).    The statement filed on behalf of the defendant is, in part, as follows:

>       5.    Prior to the commencement of assembly operations in Guam, Sigallo, through its customs attorneys, applied for a binding ruling with Customs Headquarters to confirm whether sweaters assembled in Guam from foreign components would be considered products of an insular possession for purposes of entitlement to duty free treatment under General Headnote 3(a), TSUS.
>
>       6.    . . . Headquarters confirmed in   HRL 067217 (April 10, 1981) that such sweaters are products of Guam and would be "entitled to enter the United States under General Headnote 3(a), TSUS, provided the value limitation of the statute is met and there is compliance with 7.8(d), Customs regulations."
>
>       7.    . . . Sigallo sought another ruling from Customs to determine the applicability of statutory transaction value to the importation of the sweaters to be manufactured in and exported from Guam.
>
>       8.    Sigallo's August 3, 1981 ruling request, also prepared with the advice of customs counsel, identified the facts and circumstances of the proposed importations, advising that Sigallo Pac-Ltd., a corporation organized under the laws of Guam, would produce sweaters from nonterritorial components and that Sigallo and Pac were "related" companies within the meaning of Section 402(g) of the TAA.   . . .
>
>       9.    Sigallo's August 3, 1981 ruling request also asked Customs to confirm that, if in the absence of

transaction value (either under section 402(b) or 402(c), TAA) Sigallo should elect to seek appraisement under computed value rather than deductive value, the invoice price will represent computed value and that the "amount for profit and general expenses equal to that usually reflected in sales of merchandise of the same class or kind as the imported merchandise" shall be considered the producer's actual general expenses and profit.

10. In HRL 542580 [Nov. 4, 1981], Customs determined that the goods would be appraised under transaction value at their invoice values.  . . .

11. . . . HRL 542580 determined that the transfer price between Pac and Sigallo would "closely approximate" and, in fact be the same as, the computed value of identical merchandise. The ruling states, *inter alia*, that "The record also reflects that the profit will be sufficient to maintain a 49 percent ratio[] of non-Guamian costs when compared to the overall appraised value of the product."

12. In reliance on this ruling, Pac began the production of sweaters in Guam and the articles were costed and invoiced in accordance with HRL 542580.

13. Thereafter, . . . Customs issued regulations for determining the country of origin of textile goods. T.D. 85-38 (effective April 4, 1984), 19 Cust. Bull. 58. The regulations provided that textile products would be considered products of the country where the panels were knit to shape, instead of the country in which they were assembled.

14. Because T.D. 85-38 would have resulted in a duty increase for sweaters assembled in Guam, special legislation was introduced on behalf of Pac for the purpose of continuing the duty free eligibility of sweaters assembled in Guam with non-territorial components. The legislation was enacted as part of the Omnibus Trade and Competitiveness Act of 1988, P.L. 100-418, 102 Stat. 1107 at 1280-81, and established item 905.45, TSUS, the predecessor provision to HTSUS 9902.61.00.

15. Throughout the relevant period (1981 to 1993), each of the importers entries from Guam were [*sic*] accompanied by a computed value statement clearly breaking out the amounts for Guamian expenses and profits.

16.  Customs consistently appraised and liquidated each of the numerous sweater entries manufactured by Pac and imported by Sigallo and Franshell in accordance with the values represented on the computed value statements.

17.  On or about February 21, 1997, Customs, through the Fines, Penalties and Forfeitures Office at J.F.K. Airport, New York, issued a penalty notice to the importers (amended on March 5, 1997 and again on April 2, 1997), . . . claiming monetary penalties and duty loss for alleged violations of 19 U.S.C. §§ 1592, 1481, and 1485 in connection with the 62 subject entries.

18.  The penalty notice alleged fraudulent violations of the statute, stating that the sweaters were assembled in Guam by foreign labor, which disqualified them from duty free treatment under HTSUS 9902.61.00.

19.  On or about March 3, 1997, the importers filed a petition challenging the penalty notice, arguing that no violation of Section 1592(a) occurred.

20.  In response to the petition, Customs . . . issued a ruling finding insufficient evidence of fraud or gross negligence, and mitigated the penalty to two times the loss of revenue.  HRL 661821 (April 24, 2001).

*    *    *

22.  On or about May 28, 1997, Customs issued an amended penalty notice to Sigallo reducing the penalty amount in accordance with . . . Headquarters' instructions in its April 24th ruling.

23.  Customs thereafter made demands on the importers for payment of penalties and duties under 19 U.S.C. §1592.  No payment was tendered by the[m] . . ..

24.  Demand for payment of the duties was then made upon WIIC, as surety, under Section 1592(d).  WIIC declined to pay the duties and the United States commenced this action.[6]

---

[6] Underscoring in original.  "TSUS", of course, were the U.S. Tariff Schedules in effect at the time of earlier imports herein, while defendant's papers elsewhere indicate that "WIIC" is it and that "TAA" refers to the Trade Agreements Act of 1979.

The sum and substance of plaintiff's response to this statement, save paragraph 16[7], is that it "does not disagree", although, appropriately, it refers the court to the cited Customs letters themselves for their precise contents. Plaintiff's own statement, styled Proposed Findings of Uncontroverted Fact, points to one Steven Segal, "now deceased . . . president and sole shareholder"[8] of the related corporate entities Sigallo, Franshell, and Pac. It also states, among other things:

16. During the time of the entries at issue, Sigallo's financial officer used a spreadsheet to compute the amount of "Guam expense and profit" for each invoice. The calculations were based upon the actual values for the costs attributable to foreign sources, including the cost of materials (foreign piece-good, labels, threads, poly-bags, etc.) and shipping (ocean freight associated with shipping the foreign material to Guam) and average values for certain costs attributable to Guam sources (non-foreign), including manufacturing costs (direct and indirect labor and manufacturing overhead). . . .

17. The average values for labor and manufacturing overhead at the Guam factory were estimated based

_____

[7] As to this averment, plaintiff's response is that it

disagrees with this allegation because it constitutes an incorrect characterization of Customs's role with respect to the entries at issue. Plaintiff states that the importers filed the entries in accordance with the values represented on the computed value statements and that the entries were liquidated without change by Customs. Subsequent investigation by Customs revealed that certain amounts listed on the computed value statements were inaccurate or had no factual basis. . . .

[8] Plaintiff's Proposed Findings of Uncontroverted Fact, para. 4, p. 1.

upon the expected production for the year divided by the total manufacturing and overhead costs incurred during the previous year. . . .

18. With these costs as inputs, Sigallo's financial officer used the spreadsheet to calculate an amount for "Guam expense and profit" for each invoice such that the total costs allegedly attributable to Guam sources w[ere] equal or greater than the costs attributable to foreign sources. . . .

19. The purpose of this method of determining the appraised value of the entered merchandise was to ensure that the merchandise qualified for duty-free treatment pursuant to HTSUS [9902].61.00. . . .

20. Over the course of each year, the portion of the money Sigallo paid to Pac for each shipment as "Guam expense and profit" began to accumulate in Pac's accounts. . . .

21. As the Guam "profits" began to accumulate, Pac would periodically return the money to Sigallo in the form of intra-company payments. . . .

22. These intra-company refund payments were made periodically during the course of each year and were described in Sigallo's combined financial statements as "dividends." . . .

23. Steven Segal personally directed the frequenc[y] and quantity of the "dividend" refunds by means of telexes transmitted to Pac. . . .

24. According to Sigallo's 1992 consolidated financial statement, Pac stated that it earned $2,714,452 in net income during the year, but refunded to Sigallo the exact same amount as "dividends" during the course of the year. . . .

25. Sigallo routinely sold the imported sweaters to domestic retailers at an amount less than the price it paid Pac to import them. . . .

26. The combined Sigallo companies operated profitably during the time of the entries at issue. . . .

*     *     *

>    34. Customs Headquarters . . . ruling on April 24, 2001
>        upon the importers' petition . . . found that
>        the[ir]. . . reliance on the earlier . . . ruling
>        of November 4, 1981 to justify [their] method of
>        appraising the merchandise was inappropriate. Cus-
>        toms . . . concluded that the importer[s] made
>        material false statements on the entry documents
>        and were liable for the unpaid duties of $2,924,-
>        392.45 and for a penalty based upon negligence,
>        rather than fraud, in the amount of $5,848,784.90.
>        Thus, . . . Headquarters mitigated the penalty.
>        . . .

Citations omitted.

The defendant admits these paragraphs of plaintiff's statement except for number 23, as to which it pleads lack of information sufficient to formulate an answer.  See Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact, pp. 2, 3.

Given the substantial agreement between the parties over the salient facts, and having reviewed the documentary evidence submitted by them in regard thereto, the court concludes that this action can be decided via summary judgment.  That is, the governing issues are matters of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986); Thermacote Welco Co. v. United States, 27 CIT ___, ___, 246 F.Supp.2d 1327, 1328 (2003).  And, in addressing those matters, the Tariff Act provides that,

>    if the monetary penalty is based on negligence, the
>    United States shall have the burden of proof to establish
>    the act or omission constituting the violation, and the
>    alleged violator shall have the burden of proof that the
>    act or omission did not occur as a result of negligence.

19 U.S.C. §1592(e)(4).

II

According to the Revised Penalty Guidelines of Customs, 19 C.F.R. Part 171, Appendix B(B)(1) (1992), a violation of 19 U.S.C. §1592(a)

> is determined to be negligent if it results from an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances in ascertaining the facts or in drawing inferences therefrom, in ascertaining the offender's obligations under the statute, or in communicating information so that it may be understood by the recipient. As a general rule, a violation is determined to be negligent if it results from the offender's failure to exercise reasonable care and competence to ensure that a statement made is correct.

See, e.g., United States v. Yuchius Morality Co., 26 CIT 1224, 1228 (2002).

The predicate of plaintiff's present action, albeit not reproduced among the papers in support of its motion for summary judgment, is the ruling letter 661821 (April 24, 2001) of Customs Headquarters.  It refers to the Notice of Penalty on Customs Form 5955A, which reaffirms duty-free entry for merchandise "which is assembled in Guam by U.S. citizens, nationals, or resident aliens" but also states that

> Customs discovered that the importer did not comply with the provisions of HTSUS 9902.61.00 because it utilized foreign workers to manufacture the sweaters it imported.

Plaintiff's Appendix, p. 144 (capitalization deleted).  More than four years later, HQ 661821 concluded that the Service could not

substantiate this claim.  See Defendant's Memorandum, Exhibit C, p.

2.  Furthermore:

>      The record before us does not contain sufficient
> evidence to show that the petitioners knew of their obli-
> gation to report the "dividend" payment.  We find that
> there is insufficient evidence to warrant a finding of
> fraud or gross negligence in this case.

Id. at 3.  Nonetheless:

> . . . We determine that the petitioners failed to
> exercise reasonable care in their failure to report to
> Customs the fact of the "dividend" payment.  We conclude
> that the material omissions were the result of negli-
> gence.

Id.

On the record adduced, the court cannot and therefore does not concur even in this mitigated conclusion.

A

The plaintiff refers to its deposition of the importers' financial officer, Alvin Loux, who stated that the amount declared for "Guam expense and profit" was a "forced number" to ensure that the value added in the territory was above the 50-percent threshold of duty-free status.  See Plaintiff's Memorandum, pp. 15-16, citing Plaintiff's Appendix, pp. 106-10.  The plaintiff alleges that in so doing the importer(s) acted, at a minimum, negligently because they should have realized that domestic buyers would not agree to purchase the garments at prices covering such a number.  See id. at 19, citing Plaintiff's Appendix, p. 99.  The investigation revealed, however, that the importer(s) could afford this approach

because they would periodically receive the dividend payments, as deponent Loux reaffirmed:

>    Q     Did it happen that Sigallo [] was paid less for a group of sweaters than it paid [] Pac for those same sweaters?
>
>    A     Yes.
>
>    Q     Was that a frequent occurrence?
>
>    A     Sure.  That's how the dividend money accumulated.
>
>    Q     Can you explain that?
>
>    A     Well . . . Pac had the difference as . . . excess profit . . .. Because we brought it up over that 50 percent mark, . . . the profit on those sweaters was all in Guam.  So we had to get the money back. The money had to be dividended back.

Plaintiff's Appendix, p. 109.  Indeed, Customs discovered that the importer(s) received the subsidiary exporter's entire net income for the 1992 fiscal year, for example, via dividend distributions. See id. at 15-16, paras. 12-15.

The plaintiff attempts to take the position now that this approach had not been disclosed and that it would have affected the subject merchandise's applicable duty rate and thus that the importers' failure to disclose it constituted a material omission under section 1592(a)(1)(A).  See Plaintiff's Memorandum, pp. 27-29, citing United States v. Rockwell Int'l Corp., 10 CIT 38, 41-42, 628 F.Supp. 206, 209-10 (1986).  But the defendant confirms that the importer(s) did inform Customs of the intent that the value

added in Guam would be of an amount sufficient to ensure duty-free
entry of the imports.  It states that, in fact, Customs had allowed
the importer(s) to structure their transactions this way, as
indicated in HQ 542580 (Nov. 4, 1981):

> . . . If in the absence of any transaction value either
> under section 402(b) or 402(c), Sigallo Ltd. ("Ltd.")
> should elect to seek appraisement under computed value
> . . ., you request that we confirm that the invoice price
> will represent computed value and that the "amount for
> profit and general expenses equal to that usually
> reflected in sales of merchandise of the same class or
> kind as the imported merchandise" shall be the producer's
> actual general expenses and profit.
>
> *   *   *
>
> . . . [T]he transfer price will represent Pac's full cost
> of materials as landed in Guam, its actual direct labor,
> overhead . . . and general expenses.  The record also
> reflects that the profit will be sufficient to maintain
> a 49 percent ratio of non-Guamian costs, when compared
> with the overall appraised value of the product.  . . .
> Section 402(e)(2)(B) requires that the amount for general
> expenses and profit be based upon the producer's profit
> and general expenses, unless the producer's profit and
> expenses are inconsistent with those usually reflected in
> sales of the same class or kind as the importer's
> merchandise.  Because there are no other producers of
> this merchandise in Guam for exportation to the United
> States, Pac's figures represent "the usual general ex-
> penses and profit."
>
> Under the circumstances, since the transfer price
> between Pac and Ltd. will "closely approximate" and in
> fact be the same as the computed value of identical
> merchandise, a transaction value may be found for the
> merchandise at the transfer price between Ltd. and Pac.

Plaintiff's Appendix, pp. 140, 141, 142.  In the importers' ap-
plication requesting this ruling from Customs, counsel had openly
stated:

One of the compelling reasons for [Sigallo] Ltd. or any importer to import high tariff rate articles from Guam is the possibility of their duty-free treatment. Where, as here, foreign materials are incorporated into the product manufactured in Guam, the only way to ensure duty-free treatment is for the manufacturer to realize a sufficiently great profit so as to maintain the ratio of foreign components to the overall value of the product at less than 50%. It is submitted that Pac would realize a similar profit on sales to unrelated parties for the same reason.

Id. at 137-38. Moreover, to quote further from HQ 661821, promulgated some 20 years later:

. . . [T]he principal question is whether the price declared by the [importers] accurately represents the price actually paid or payable. The value statute states that any rebate of, or other decrease in, the price actually paid or payable made or otherwise effected between the buyer and the seller after the date of importation will be disregarded in determining the transaction value. 19 U.S.C. § 1401a(b)(4)(B). Notwithstanding this provision, the Customs regulations provide that in determining transaction value, the price actually paid or payable will be considered without regard to its method of derivation and may be arrived at by the application of a formula. 19 C.F.R. § 152.103(a). Customs has ruled that if the decrease is pursuant to a formula that was in existence prior to the date of exportation, then such decrease will not be disregarded. See HRL 544944, May 26, 1992. The failure to declare the "dividend" payments materially affected Customs ability to correctly appraise the merchandise. We conclude therefore that the [importers] made a material omission under 19 U.S.C. § 1592(a).

Defendant's Memorandum, Exhibit C, p. 3.

The above-quoted characterization of the importers' approach as a "formula"[9] within the meaning of 19 C.F.R. §152.103-

---

[9] See Deposition of Alvin Loux, Plaintiff's Appendix, p. 106 (discussing the "formulation" of the "Guam expense and profit" figure).

(a)(1) is thus central to the Headquarters conclusion that Sigallo/ Franshell had a duty to report the post-importation dividend payments. But the plaintiff does not discuss this characterization in its motion papers. On its behalf, the defendant states that the characterization is inapposite herein. It maintains that neither section 152.103(a)(1) nor any other provision of law obligates an importer to report receipt of post-importation dividends. See, e.g., Defendant's Response in Opposition to Plaintiff's Motion, pp. 19-20, citing 19 U.S.C. §1401a(b)(4)(B):

> Any rebate of, or other decrease in, the price actually paid or payable that is made or otherwise effected between the buyer and seller after the date of the importation of the merchandise into the United States shall be disregarded in determining the transaction value under paragraph (1).

Cf. 19 C.F.R. §152.103(g) (1992); Statements of Administrative Action, H.R. Doc. No. 96-153, Part II, p. 444 (1979).

The court concurs that the word "formula", when read in the context of 19 C.F.R §152.103(a)(1), does not appear to implicate the importers' distribution of profit via dividends, to wit:

> . . . In determining transaction value, the price actually paid or payable will be considered without regard to its method of derivation. It may be the result of discounts, increases, or negotiations, or may be arrived at by the application of a formula, such as the price in effect on the date of export in the London Commodity Market.

This usage of that word does not connote an approach of the kind herein to distribute dividends to a shareholder some time after

exportation.   Cf. Gustafson v. Alloyd Co., 513 U.S. 561 (1995):

>    . . . [A] word is known by the company it keeps (the
>    doctrine of *noscitur a sociis*).   This rule we rely upon
>    to avoid ascribing to one word a meaning so broad that it
>    is inconsistent with its accompanying words, thus giving
>    "unintended breadth to the Acts of Congress."

Id. at 575 (citation omitted).   Furthermore, even if the court were to agree with Customs that the plan to pass profits to Sigallo/Franshell was "a formula that was in existence prior to the date of exportation", that still would not validate its ruling herein.   That is, the only decision it cites in support thereof, HQ 544944, is in fact inapposite.   In that matter, the Service stated that prices subject to an adjustment, either upward or downward, pursuant to a formula in existence prior to the date of exportation cannot be considered the transaction value of an import, citing HQ 543252 (March 30, 1984).   The importer and exporter therein had a contract wherein the latter would transfer funds to the former subsequent to the importation of its merchandise.   Customs distinguished that contractual formula from that where a price adjustment pursuant to a prior formula could not be determined until after the merchandise had been imported, such as was considered in HQ 543252.   And, in contrast to that situation, in HQ 544944 the Service disregarded the importer's post-importation receipt of funds from the exporter since the price could be determined prior to importation, to wit:

>    . . . The payment to the importer from the seller
>    subsequent to importation was a rebate of or other de-

crease in the price paid or payable made after the date of importation and should thus be disregarded in determining transaction value, pursuant to [19 U.S.C. §1401a-(b)(4)(B)].

Here, transaction value was based on the transfer price between Pac and Sigallo/Franshell pursuant to 19 U.S.C. §1401a(b)-(2)(B)(ii)[10] at the time of importation.  The dividends were distributed to the exporter's parent importer(s) later.  Cf. HQ 545063 (Sept. 8. 1992):

> That the price was in part set so that the seller could make a profit, and the buyer take advantage of a duty-free provision, is merely a factor that went into the negotiations of the price . . ..  It does not fall under any of the four limitations [on the use of transaction value].

In sum, the court concludes that Customs erred in its analysis of 19 C.F.R. §152.103(a)(1) in HQ 661821; the result thereof -- that

---

[10] See HQ 542580 (Nov. 4, 1981), supra.

Notwithstanding the binding effect of this ruling letter, it does not constitute "treatment" under 19 U.S.C. §1625 (1993), as defense counsel point out.  See Defendant's Response in Opposition to Plaintiff's Motion, pp. 11, 14-15.  The government correctly recognizes that treatment under section 1625(c) "requires Customs to publish for public comment any interpretative ruling that would have the effect of modifying how it had treated substantially identical transactions in the past."  Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion, p. 8.  Here, as confirmed in the importers' application for a binding ruling [see Plaintiff's Appendix, p. 136], there was no substantially-identical merchandise being imported into the United States by others at, or before, that time.  Customs

> merely accepted the information provided by Sigallo on its [1981] entry documents at face value, and then discovered [in its 1995 investigation] that Sigallo had not provided material information that would have affected the valuation and duty-free entry of the merchandise.

Id.

the importer(s) were required to report the post-importation divid-

ends -- cannot be affirmed by this action.

B

The plaintiff claims that the importer(s) violated 19

U.S.C. §1485(a) by falsely reporting or, in the alternative,

failing to update with actual numbers Pac's estimated labor and

overhead costs.  See Plaintiff's Memorandum, pp. 22-23, citing

Plaintiff's Appendix, p. 2, para. 8; Plaintiff's Reply, pp. 3-4,

quoting section 1485(a)(4):

> [The importer] will produce at once to the appropri-
> ate customs officer any invoice, paper, letter, document,
> or information received showing that any [] prices or
> statements [submitted under oath] are not true or
> correct.

See, e.g., United States v. Jac Natori Co ., 19 CIT 930, 933-35

(1995), aff'd in part, vacated in part, 108 F.3d 295 (Fed.Cir.

1997); Memorandum in Support of Plaintiff's Opposition to Defend-

ant's Motion, p. 9.  In their application for a binding ruling, the

importers' counsel had stated that

> Pac's transfer price to [Sigallo] will represent its full
> cost of materials as landed in Guam; its actual direct
> labor, overhead and other general expenses . . . and
> sufficient profit to maintain a maximum 49% ratio of non-
> Guamian costs, when compared with the overall appraised
> value of the product.

Plaintiff's Appendix, p. 136.  However, as apparently admitted by

the importers' now-deceased president during his interview by

Customs special agents, "it was impossible to compute their value as [Pac] had no actual costs of overhead until year's end." Id. at 6.  He also admitted never having reconciled the estimated figures with actual numbers.  See id.  See also Deposition of Alvin Loux, id. at 105 ("we estimated what the labor and delivery would cost based on last year"); Declaration of Richard Sartin, id. at 63 ("Direct labor [and] indirect labor and overhead were sample costs").

Be that as it may, plaintiff's posture at this time is still akin to post-hoc rationalization of a ruling or to an extemporaneous amendment of an indictment, each of which violates due process.[11]

---

[11] Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962), for example, has held that the

> courts may not accept appellate counsel's *post hoc* rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself[.] . . . For the courts to substitute their or counsel's discretion for that of the [agency] is incompatible with the orderly functioning of the process of judicial review[,]

referring to SEC v. Chenery Corp., 318 U.S. 80, 87 (1943):

> . . . The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.

Improper amendment "occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them." Gaither v. United States, 413 F.2d 1061, 1071 (D.C.Cir. 1969) (footnotes omitted).  Compare Ex parte Bain, 121 U.S. 1, 13 (1887), with United States v. Cotton, 535 U.S. 625, 630-31 (2002).

III

In view of the foregoing, the plaintiff does not satisfy its burden of proving that the importer(s) acted in violation of 19 U.S.C. §1592.  Hence, the defendant need not prove that its importer principal(s) were not negligent.  See 19 U.S.C. §1592(e)(4), supra.  And, without an actionable claim against the importer(s) pursuant to section §1592(a), there is no basis for collecting duties from their surety under subsection 1592(d).  Cf. United States v. Blum, 858 F.2d 1566 (Fed.Cir. 1988).  Ergo, plaintiff's motion for summary judgment cannot be granted, and judgment must therefore enter, granting defendant's cross-motion and dismissing this action.

Decided:  New York, New York
          May 12, 2005

                                        Thomas J. Aquilino, Jr.
                                            Senior Judge